# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHASON ZACHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 CV 7256 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| COMCAST CABLE COMMUNICATIONS ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, defendant's motion to compel arbitration is granted.

## BACKGROUND

Plaintiff, Chason Zacher, alleges in this putative class action that defendant Comcast Cable Communications, LLC ("Comcast") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), when it called his cellular telephone in August 2017, "looking for the account holder for a specific address."[1] (ECF No. 18, First Am. Compl. ¶¶ 3, 14, 17.) Comcast moves to compel arbitration and stay this action on the basis that Zacher previously entered into a Subscriber Agreement with Comcast that requires arbitration of the parties' disputes.

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), governs the enforcement of arbitration agreements. *Int'l Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 395 (7th Cir. 2002). The FAA "evinces a national policy favoring arbitration" and "requires federal

---

[1]That address is 823 Greenbrier Road in DeKalb, Illinois, which is the location of Zacher's college fraternity, Alpha Epsilon Pi. (ECF No. 25-1, Decl. of Chason Zacher ¶¶ 5-6.)

courts to place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059-60 (7th Cir. 2018) (internal quotation marks and citations omitted). The Court will compel arbitration under the FAA "if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Id.* at 1060. The third element is satisfied because Zacher refuses to arbitrate.

*Enforceable Written Agreement to Arbitrate*

Whether a binding arbitration agreement exists is determined under principles of state contract law. *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Because all relevant events occurred in Illinois, Illinois law determines the validity of the agreement. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). Under Illinois law, where the language of a contract is plain, the agreement is enforced as written. *Gore*, 666 F.3d at 1033 (citing *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. Ct. 2006)).

In support of its motion, Comcast submits the declaration of Nicole Patel, a Comcast Director of Regulatory Compliance, who states that Comcast's business records reflect that Zacher is listed as a contact for a Comcast account that was opened in August 2011 and

registered to Alpha Epsilon Pi.² (ECF No. 21-2, Decl. of Nicole Patel ¶¶ 1, 4.) The telephone number that Zacher alleges Comcast called without his consent is associated with the Alpha Epsilon Pi account. (*Id.* ¶ 4.) Comcast's records also reflect that Zacher subsequently personally subscribed to Comcast's service for an address on West Lincoln Highway in DeKalb, and then again in July 2014 for an address on Normal Road in DeKalb. (*Id.* ¶ 5.) Comcast provided service to the Normal Road address and received payments on the account (the "Normal Road account"), and the service was disconnected in July 2015. (*Id.* ¶¶ 5, 8.) According to Comcast, its regular business practice (it does not specify at what time) is for its installation technicians to provide Comcast's Subscriber Agreement to customers in connection with the installation and for the technicians to direct customers to read and accept the Subscriber Agreement when activating service. (*Id.* ¶ 6.) Attached to Patel's declaration is a copy of the "Comcast Customer Privacy Notice" and the "Comcast Agreement for Residential Services" ("Subscriber Agreement") as they existed at the time Zacher personally subscribed to Comcast's service for the Normal Road account. (*Id.* ¶ 7.) The Subscriber Agreement provides in pertinent part:

---

²The Court is unpersuaded by Zacher's contention that Patel's declaration constitutes inadmissible hearsay for lack of personal knowledge. In her submissions, Patel avers that her statements are based on her personal knowledge or review of Comcast's business records in the scope of her duties. The contents of Comcast's business records pertaining to Zacher fall under the business-records exception to hearsay, Federal Rule of Evidence 803(6), which "clearly does not require that the witness have personal knowledge of the entries in the records." *United States v. Christ*, 513 F.3d 762, 770 (7th Cir. 2008). Furthermore, Federal Rule of Evidence 406 provides that "[e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness." The Court also rejects Zacher's argument that Patel's declaration is "too vague to be given any weight." (ECF No. 25, Pl.'s Mem. Opp'n Def.'s Mot. at 2.)

- This Agreement contains a binding arbitration provision in Section 13 that affects your rights under this Agreement with respect to all Service(s).

- You will have accepted this Agreement and be bound by its terms if you use the Service(s) or otherwise indicate your affirmative acceptance of such terms.

- If you have a Dispute (as defined below) with Comcast that cannot be resolved through an informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury. Proceeding in arbitration may result in limited discovery and may be subject to limited review by courts.

- The term "Dispute" means any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Provision. "Dispute" is to be given the broadest possible meaning that will be enforced.

- . . . THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS.

- This Arbitration Provision shall survive the termination of your Service(s) with Comcast.

(Patel Decl., Ex. 1, Subscriber Agreement, at 1, 16-18.) The Subscriber Agreement also contains a provision that allows subscribers to opt out of arbitration by notifying Comcast within thirty days of receiving the Subscriber Agreement. (*Id.* at 16.) Patel states that Comcast's regular business practice is to maintain records of such opt-out requests, and it has no record of Zacher's

having notified Comcast that he wished to opt out of the arbitration provision. (Patel Decl. ¶ 11.)

In response to Comcast's motion, Zacher submits a declaration in which he states that he set up his Comcast service himself, so a Comcast service technician never provided him with a professional installation. (Zacher Decl. ¶¶ 8-9.) He denies that he was "provided a copy" of the Subscriber Agreement and says that he never agreed to its terms and first became aware of the existence of the arbitration clause when Comcast filed its motion to compel arbitration. (*Id.* ¶¶ 9-10.)

In reply, Comcast argues that because it routinely provides a copy of the Subscriber Agreement to all subscribers, regardless of whether they install their own service or have a Comcast technician install the service, Zacher's averments are insufficient to raise a genuine issue of fact as to whether the parties entered into a contract. (ECF No. 26, Def.'s Reply at 4-6.) Comcast submits a supplemental declaration from Patel, who states that Comcast's records reflect that for the Normal Road account, Zacher was sent a "self-install kit." (ECF No. 26-1, Suppl. Decl. of Nicole Patel ¶ 5.) Comcast's regular business practice since prior to 2014 is to include in every self-install kit a "Welcome Kit" that contains a hard copy of the Subscriber Agreement, along with other service-related information. (*Id.* ¶ 6.) The version of the Subscriber Agreeement that was in effect at the time Zacher was sent a self-install kit is the same as was attached to Patel's initial declaration. (*Id.* ¶ 7.)

Comcast has presented evidence through Patel's declarations that Comcast mailed Zacher a self-install kit for the Normal Road account and that Comcast's routine business practice at the relevant time was to provide customers with a hard copy of the Subscriber Agreement in the self-install kit. A custom or policy of mailing creates a presumption that such mailing occurred

and was delivered.  *See, e.g.*, *Pohlman v. NCR Corp.*, No. 12 CV 6731, 2013 WL 3776965, at *3 (N.D. Ill. July 17, 2013).  Zacher's general denial that he "was provided" with the Subscriber Agreement "as part of the set-up" of service is not enough to overcome this presumption.  *See O'Quinn v. Comcast Corp.*, No. 10 CV 2491, 2010 WL 4932665, at *3 (N.D. Ill. Nov. 29, 2010).  The FAA does not require agreements to be signed, only written.  9 U.S.C. § 3.  Zacher installed his own Comcast service and proceeded to use the service, which the Subscriber Agreement states constitutes acceptance of its terms, and Zacher provides no evidence to rebut Comcast's evidence that he did not opt out of the arbitration provision.  Zacher does argue, citing *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016) (denying defendant's motion to compel arbitration on the ground that there was a lack of mutual intent to arbitrate "literally every possible dispute" between the parties), that arbitration clauses "with unlimited scope . . . raise questions of contract formation."  (Pl.'s Mem. Opp'n Def.'s Mot. at 7.)  Zacher urges this Court to "adopt the reasoning in *Wexler* and refuse to compel arbitration" because "the arbitration clause at issue is so broad as to raise serious doubts as to mutual intent."  (*Id.* at 7-9.)  The Comcast arbitration clause, however, does not have "unlimited" scope.  It is confined to disputes regarding the parties' relationship.  *Wexler* is distinguishable because the arbitration provision at issue there was much broader.  It stated that the parties agreed "to arbitrate all disputes and claims between" them.  211 F. Supp. 3d at 501.

Accordingly, Comcast has shown that the parties entered into an enforceable written agreement to arbitrate.

***Dispute Within Scope of Subscriber Agreement***

Comcast argues that Zacher's TCPA claim is related to an aspect of his relationship with Comcast because the claim arises from calls that were allegedly placed to a telephone number

6

that Zacher provided to Comcast in connection with his Comcast accounts. Comcast also argues that even if there is an issue about whether the claim is within the scope of the arbitration agreement, that issue is for the arbitrator to decide, in light of the parties' agreement that arbitrable "disputes" include the "scope of this Arbitration Provision." (Patel Decl., Ex. 1, Subscriber Agreement, at 16.) In response, Zacher asserts that the telephone calls underlying this case relate not to the relationship between Zacher and Comcast but rather to the contract between Alpha Epsilon Pi and Comcast. Zacher also contends that the issue of scope is for this Court and not the arbitrator to decide, citing *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010) for the proposition that "the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause" sought to be enforced. (Pl.'s Mem. Opp'n Def.'s Mot. at 6 & n.1.)

Courts usually decide "gateway matters," including whether a binding arbitration clause applies to a certain type of dispute. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). But this general rule does not apply when there is "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). An agreement to arbitrate a gateway issue, which is sometimes called a "delegation provision," is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). This Court agrees with courts in this district that have found that language defining an arbitrable "dispute" as including the "validity, enforceability or scope" of the arbitration agreement clearly

7

demonstrates the parties' intent to delegate these gateway issues to the arbitrator.[3] *See, e.g., Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015); *Bayer v. Comcast Cable Commc'ns, LLC*, No. 12 CV 8618, 2013 WL 1849519, at *3 (N.D. Ill. May 1, 2013).

Thus, there is clear evidence here that the parties agreed to arbitrate the issue of whether this dispute is within the scope of their arbitration agreement. Zacher's citation to *Granite Rock* is unavailing because it is taken out of context and fails to acknowledge the qualifier that immediately follows the quoted statement—"[w]here there is no provision validly committing [formation or applicability issues] to an arbitrator." 561 U.S. at 297. It is clear from the Court's discussion in *Granite Rock* that a court must resolve issues of an arbitration clause's scope *unless* the parties have clearly and unmistakably delegated those issues to an arbitrator. Zacher and Comcast clearly and unmistakably did so. Therefore, the Court will compel arbitration, and the scope issue can be raised before the arbitrator.

## CONCLUSION

Defendant's motion to compel arbitration [20] is granted. Arbitration shall proceed. Therefore, this lawsuit is administratively dismissed without prejudice subject to full reinstatement, if requested by either party, upon completion of the required arbitration. *See Davis v. Fenton*, 857 F.3d 961, 962 (7th Cir. 2017). Civil case terminated.

---

[3]Zacher does not contend otherwise; in fact, Zacher's brief does not address the language of the delegation clause.

**DATE**: June 20, 2018

                                                                    _____
                                                                    **Ronald A. Guzmán**
                                                                     **United States District Judge**